UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KORANSKY, BOUWER & PORACKY, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  3:10cv535 |
| | ) | |
| THE BAR PLAN MUTUAL INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the court on cross motions for summary judgment.   On October 3, 2011, the defendant, The Bar Plan Mutual Insurance Company ("Bar Plan") filed a motion for summary judgment.  On November 21, 2011, the plaintiff,  Koransky, Bouwer & Poracky, P.C. ("Koransky"), filed a response to which the Bar Plan replied on December 5, 2011.

On October 3, 2011, Koransky filed a cross motion for summary judgment.  The Bar Plan responded to the motion on November 21, 2011, to which Koransky replied on December 5, 2011.

Also before the court is a motion to strike, filed by Koransky on November 21, 2011. The Bar Plan responded to the motion on December 5, 2011, to which Koransky replied on December 12, 2011.

For the following reasons the Bar Plan's motion for summary judgment will be granted, Koransky's motion for summary judgment will be denied, and the motion to strike will be deemed moot.

<u>Summary Judgment</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. <u>Id</u>. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Heft v. Moore</u>, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." <u>Goodman v. Nat'l Sec. Agency, Inc.</u>, 621 F.3d 651, 654 (7th Cir. 2010).

<u>Discussion</u>

The Bar Plan recites the following facts in support of its motion for summary judgment. Koransky had a dispute arising with a client, George Novogroder. According to Koransky's complaint, Novogroder had an ongoing relationship to purchase parcels of real estate leased to Rite Aid, including one in Lima, Ohio.. The seller of the Lima real estate, NOM Lima Shawnee LLC, tendered a signed contract in February 2007, which was executed by Koransky's client, Novogroder, on February 9, 2007. However, not having received the contract Novogroder signed from Koransky within the specified time, NOM Lima Shawnee LLC's offer to sell the land to Novogroder expired. NOM Lima Shawnee LLC rescinded the purchase agreement with Koransky's client, Novogroder.

Attorney Jim Yannakopoulos of Koransky sent an email about the proposed Lima purchase on February 23, 2007, the day after NOM Lima Shawnee LLC withdrew the purchase agreement with Koransky 's client, Novogroder. In that email, attorney Yannakopoulos admitted that the original, signed documents relating to the Ohio purchase were placed in the wrong file. Despite this email, the Ohio seller refused to withdraw its cancellation notice, resulting in Novogroder's lost opportunity to purchase the real estate in question. The Bar Plan renewal documents identifying no risk of any claim were received by the Bar Plan from Koransky on March 19, 2007.. Koransky did not report the Novogroder claim to the Bar Plan until August 30, 2007.

Specifically, regarding the underlying Novogroder attempt to purchase property in Ohio, attorney James M. Yannakopoulos of Koransky, received a letter dated February 22, 2007 stating, "[b]uyer has not accepted and returned the Contract, and effective immediately Seller hereby rescinds Seller's signature to the offer and declares the Contract null and void and of no further effect." Attorney Yannakopoulos wrote an email on February 23, 2007 stating, "I looked through all my files. It turns out the originals were placed in the wrong Rite Aid file, attached are scanned copies of the signed documents. This whole situation was my fault and not the fault of my client. I apologize for the situation. I therefore kindly request that the cancellation notice be withdrawn, and upon withdrawal, I will overnight the signed originals." In response, Attorney Yannakopoulos received an email stating, "[o]ur business team has met and confirmed their decision to rescind the Seller's offer. We have decided to take a different strategic direction with this property…"

Koransky's client Novogroder contested the withdrawal, and the matter proceeded to litigation in more than one state. According to the complaint, while NOM Lima sued in Alabama, Novogroder sued in Ohio. The Alabama court asserted jurisdiction over Novogroder,

and found that no contract had been formed. <u>Novogroder v. NOM Lima Shawnee LLC</u>, 2009

U.S. Dist. LEXIS 116729 (N.D.Ohio Nov. 20, 2009). In <u>Novogroder</u>, the District Court in Ohio

noted that the Alabama court issued a declaratory judgment in favor of NOM. *Id*. at *1-4. It

explained that "I stayed this suit, permitting the first-filed Alabama suit to go forward. That

court determined, and its judgment is final, that the parties did not have a contract for the sale

and purchase of the drugstore. That judgment precludes Novogroder's claims in this case."

<u>Novogroder v. NOM</u>, 2010 U.S. Dist. LEXIS 118517(N.D.Ohio Nov. 8, 2010). The Ohio

district court explained the facts as follows:

> [a]fter extensive negotiations and three earlier drugstore sale/purchase
> transactions involving the same parties, the owner sent a signed
> purchase agreement to Novogroder. He did not return it … the owner notified
> Novogroder that it was rescinding its offer. Novogroder's counsel immediately
> contacted the owner, asking it to go through with the sale to Novogroder. It
> declined to do so.

*Id.* at *2-3.

Policy No. 0007240-2006, policy period 4-15-06 to 4-15-07, the contract between

the Bar Plan and Plaintiff states in relevant part:

> **II.     COVERAGE ...**
> **C.     DISCOVERY CLAUSE:**
> *If during the Policy Period, or any Extension Period elected hereunder, an*
> *Insured first becomes aware of a specific incident, act or omission while acting*
> *in a professional capacity providing Legal Services, which may give rise to a*
> *Claim* for coverage is provided under this Policy, *and during the Policy Period or*
> *any Extension Period Coverage the Insured gives written notice to the company*
> *of:*
> 1.     *The specific incident, act or omission;*
> 2.     *The injury or damage which has resulted or may result* from such incident, act
>        or omission; and
> 3.     *The circumstance(s) by which the Insured first became aware* of such incident,
>        act or omission; *then any Claim that may subsequently be made against the*
>        *Insured arising out of such incident, act or omission shall be deemed for the*

> *purposes of this insurance to have been made during the Policy Period* or any
> Extension Period elected hereunder.  The Insured shall cooperate fully with the
> Company as provided in Section VII.  CLAIMS, Paragraphs A. and B., and any
> investigation conducted by the Company or its representatives shall be subject to
> the terms set forth in this Policy.

(2006-2007 Contract, p. §IIC, pages 19-20 of 30, emphasis added).

In its Renewal Application for Lawyers' Professional Liability Insurance, for the 4-15-

2007– 4-15-2008 policy period, signed by Greg A. Bouwer on March 10, 2007 and received by

The Bar Plan on or about March 19, 2007, Koransky provided in pertinent part:

> **CLAIMS**
> 24.    After the inquiry of each lawyer named in the firm: …
> b.    ***has the firm or any attorney in the firm been the subject of a professional
> liability claim, suit, bar complaint, formal grievance or fee dispute*** filed with a
> state or local bar association not previously reported to us? ( ) Yes ( X ) No
> c.    ***does the firm or any attorney or employee in the firm have knowledge of any
> incident, circumstance, act or omission, which may give rise to a claim not
> previously reported to us?*** ( ) Yes *( X ) No*

(Renewal Application for Insurance, for the 2007-2008 policy period, emphasis added).

The Renewal Application for Lawyers Professional Liability Insurance provides in pertinent

part:

> **NOTICE TO APPLICANT – PLEASE READ CAREFULLY**:
> REPRESENTATION: *Applicant represents that the statements and information
> contained herein are true and that Applicant has not suppressed, omitted or
> misstated any facts. Applicant has made inquiry with each lawyer in the firm
> regarding the accuracy of the answers on this application. Applicant agrees that
> this application shall be the basis of the Policy of insurance issued by the
> Company and incorporated therein. Applicant agrees to notify the Company of
> any material change(s)* in the statements in the application forms between the date
> of the application and the effective date of the Policy of insurance. Applicant
> understands that any change(s) may result in an adjustment of the terms and
> conditions of the Policy of insurance and/or premium charges.
> *Applicant understands that the Policy applied for provides coverage on a "claims
> made and reported" basis for ONLY THOSE CLAIMS THAT ARE FIRST
> MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY
> DURING THE POLICY PERIOD and that coverage ceases with the termination*

*of the Policy unless Applicant exercises the options available in the Policy for Extended Reporting Coverage.*
*IMPORTANT REMINDER*
*TO AVOID LOSS OF COVERAGE IT IS IMPERATIVE THAT ALL KNOWN CIRCUMSTANCES, ACT OR OMISSIONS WHICH COULD RESULT IN A PROFESSIONAL LIABILITY CLAIM AGAINST YOU, YOUR FIRM OR A PREDECESSOR IN BUSINESS BE REPORTED TO YOUR PRESENT INSURER WITHIN THE TIME PERIOD SPECIFIED IN YOUR PRESENT POLICY. PLEASE CONTACT THE BAR PLAN MUTUAL INSURANCE COMPANY IF YOU DESIRE ASSISTANCE.*
Signature of Insured Designee*:_____ Date: 3-10-07
Printed Name: Greg A. Bouwer
Email Address: gbouwer@kblegal.net

Similarly, the 2007-2008 policy number 0007240-2007 states:

## IMPORTANT NOTICES

This is a Claims-Made and Reported Policy. **Only those Claims first made against an Insured and reported to the Company during the Policy Period are covered,** subject to the terms and conditions of this Policy.
**If a Claim is made against an Insured during the Policy Period as a result of an act or omission prior to the Policy Period, Coverage is subject to the Insured having no basis to believe that such Insured had committed such an act or omission prior to the Policy Period and subject to the other terms and conditions of this Policy.**
Defense Expenses are within the Limits of Liability; meaning that payment of Defense Expenses will reduce the Limits of Liability available to pay Damages.
The Bar Plan Mutual Insurance Company is organized in accordance with provisions of Chapter 379, R.S.Mo.

### PLEASE READ CAREFULLY

In consideration of the undertaking of the Policy holder to pay, when due, all premiums, charges and the deductible described herein, in the amounts stated in the Declarations or otherwise provided for herein, and in reliance upon the statements in the application attached hereto and made a part hereof, subject to the Limits of Liability shown in the Declarations and all of the terms and conditions of this Policy, the Company agrees with the Policyholder as follows:…

    **I.    DEFINITIONS** Whenever used in this Policy: …

D**.**   **"CLAIM"** means: Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured. …

M**.**   **"POLICY PERIOD"** means: The one-year period from the effective date of this Policy to the expiration date as set forth in the Declarations or its earlier cancellation or termination date. …

    **II.    COVERAGE**

**A.	PROFESSIONAL LIABILITY AND CLAIMS-MADE AND REPORTED CLAUSE:**

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENSION PERIOD COVERAGE AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED CLAIM REPORTING PERIOD, OR ANY APPLICABLE EXTENSION PERIOD COVERAGE by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services.

PROVIDED ALWAYS THAT such act or omission happens:

1.	During the Policy Period: or
2.	Prior to the Policy Period, provided that prior to the effective date of this Policy:
a.	Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and
b.	Such Insured had no basis to believe that such Insured had committed such an act or omission.

NOTE: It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII. CLAIMS, Paragraph A. …

**III.	EXCLUSIONS**

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF**:

L.	A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim…

VII.	CLAIMS

A.	**NOTICE OF A CLAIM:**

As a condition precedent to the coverage provided by this Policy and subject to the provisions of Section II. COVERAGE, Paragraph D. of this Policy, an Insured shall, within twenty (20) days of the date of any Claim is first made against that Insured, give written notice of that Claim to the Company…

**VIII. OTHER CONDITIONS**

**A.	APPLICATION**

By acceptance of this Policy, all Insureds agree that the representations made in the Declaration Letter and Application (including all supplements) attached hereto and hereby made part of this Policy are true and complete to the best of the knowledge of all Insureds. This Policy is issued in reliance upon the truth of such representations and all Insureds warrant that no facts have been suppressed or misstated. This Policy embodies all agreements existing between the Insureds and the Company and any agents of the Company relating to this Policy.

(2007-08 policy, emphasis added).

Koransky gave notice of the Novogroder matter to the Bar Plan on August 30, 2007. Based upon the facts gathered through its investigation, the Bar Plan issued a denial letter to Koransky for the Novogroder claim on October 10, 2007. The Bar Plan's investigation of the underlying claim facts revealed that Koransky, representing Novogroder, failed to timely notify the Ohio seller of Novogroder's acceptance of the sales contract, and the Ohio seller rescinded the contract and that Koransky had admitted its error. The Bar Plan believed as of February 23, 2007, that Koransky and its attorneys knew that given the Lima, Ohio real estate seller's refusal to withdraw its cancellation notice (resulting in Koransky's client's lost opportunity to purchase the real estate in question), that a claim may be made by Novogroder against Koransky. Koransky and its attorneys first reported the Novogroder claim to the Bar Plan on August 30, 2007 under Policy 7240-2007 with the effective dates of April 15, 2007 to April 15, 2008, well after the renewal of the Koransky policy. Koransky delayed reporting the Novogroder matter to the Bar Plan from February 23, 2007 to August 30, 2007, over four months after the expiration of the 2006 policy and over six months after Koransky's and its attorneys' knowledge of the facts of the Novogroder error.

Based upon these facts and the application of the applicable policy language, and the facts gathered in its investigation, the Bar Plan denied coverage for indemnity and defense of the Novogroder matter. Koransky has sued for a declaratory judgment for full coverage under the policy in the amount of $5,000,000.00.

The Bar Plan states that it relied upon Koransky's representations, and had the facts known to Koransky as of February 2007 been disclosed to the Bar Plan in Koransky's March

2007 renewal application, as required by its express terms, the Bar Plan would have declined to issue the 2007-2008 policy renewal, or offered the policy to Koransky on very different terms reflecting the importance of the undisclosed information concerning the underlying Novogroder matter.

Koransky has provided the court with these additional facts. The Novogroder contract contained a provision that the venue of any litigation arising out of the contract would be in Allen County, Ohio, the county where the property is located. In addition, it stated that the interpretation and enforcement of the contract would be governed and construed in accordance with the laws of Ohio, the state in which the property was located. (Contract ¶ 19(f)). The prior three versions of the contracts had identical provisions, applying Ohio law, the site of all dealings between the parties.

After NOM attempted to unilaterally rescind the contract, Novogroder hired counsel in Ohio, Daniel Lindner, to research Ohio law on whether the parties had entered into a valid and binding contract and whether NOM could unilaterally rescind such contract. Novogroder and Koransky were in continuous contact with Lindner to provide him with the operative facts and to assist him in reaching his legal conclusions. Lindner then informed both Novogroder and Koransky that under Ohio law NOM and Novogroder had entered into a firm, binding contract regardless of whether the signed contract was delivered to NOM before the attempted rescission and that NOM had no basis to unilaterally rescind the contract. Lindner also confirmed that Ohio law governed the validity of the contract.

At this same time, Koransky was in the process of completing its application for renewal of its professional liability policy with The Bar Plan. On March 10, 2007, partner Greg Bouwer

submitted the firm's renewal application. After the application had been submitted, on March 14, 2007, NOM initiated a declaratory judgment lawsuit in Autauga County, Alabama. This is despite the contract provisions and despite the fact that persons who were involved in the transaction had no contacts with the State of Alabama. Ohio counsel, Lindner, maintained that all long-arm statutes and conflict of laws principles unequivocally indicated that Ohio law should have prevailed.

Based on Lindner's advice, Novogroder also filed suit in Allen County, Ohio to enforce the contract and recorded a *lis pendens* against the property. Considerable litigation ensued, primarily over the issues of jurisdiction and venue. NOM sought a declaratory judgment in Alabama that no contract existed, and Novogroder sought specific performance in Ohio. Damages were not the focus of either party's claims until, on September 22, 2009, NOM filed a counter claim in the Ohio lawsuit that had been removed to Federal Court, alleging slander of title, intentional interference with a business relationship, fraud, and requested a removal of the cloud on the title to the property. The damage claims against Novogroder were not even pled until the year 2009 and those claims are based on a *lis pendens* filed in Ohio on March 30, 2007. The Ohio case is currently pending.

On April 15, 2007, The Bar Plan renewed Koransky's professional liability policy 0007240-2007 with effective dates of April 15, 2007, through April 15, 2008. The letter from the insurance agent binding coverage states "Retroactive date: Full Prior Acts." The insurance carrier had continuously covered Koransky since 2003. It continued to insure the firm through April of 2010.

For representation in Alabama, Lindner directed Novogroder to hire the recently retired

Chief Justice of the Alabama Supreme Court Drayton Nabers, Jr., and the firm of Maynard Cooper & Gale, P.C. ("Maynard Cooper") to file a motion to dismiss in the Alabama action. Nabers had previously written Alabama Supreme Court opinions which were on point on the issues of jurisdiction, and Maynard Cooper assured Novogroder and Koransky that under Alabama law, Ohio would be the proper jurisdiction for the litigation and that Ohio law would apply. Lindner continued to assert that a contract existed and was fully enforceable, during March, April and May of 2007.

The Alabama trial court held a hearing on the motion to dismiss on June 12, 2007. It came as a surprise, at least to Koransky, that the Alabama court accepted jurisdiction of the case and would decide the merits of the case under Alabama law. After the unexpected decision by the Alabama trial court, which was contrary to the legal conclusions of Lindner and Maynard Cooper, Novogroder gave notice to Koransky in August of 2007 that he might make a claim against the firm for professional liability. Peter Koransky immediately called Ritman & Associates, the Bar Plan's insurance agent to advise Adam Gwaltney of the potential claim. During their conversations in August of 2007, Gwaltney informed Koransky that there was nothing he could do until the client had made a claim, and advised Koransky to obtain a letter from its client making the claim. On August 28, 2007, Novogroder, through his attorney, Ray Szarmach, made a written claim against Koransky. Koransky immediately forwarded the claim to The Bar Plan.

Koransky asserts that the Bar Plan's denial of the claim focused on James Yannakopoulos' failure to send out a written contract in February of 2007, but Koransky states that it believed that no claim as defined in the policy was a possibility until after June 12, 2007,

because it did not have reason to believe that a claim could be made until the Alabama Court issued its ruling.

The court will first address the motion to strike. Koransky seeks to strike portions of the affidavit of Steven C. Couch, submitted in support of the Bar Plan's motion for summary judgment. Koransky claims that the affidavit contains numerous unsubstantiated allegations, some of which are not made upon personal knowledge, and/or contain hearsay, and/or contain conclusory statements, and/or are simply statements that would not be admissible at the time of trial. Koransky objects to all or portions of paragraphs seven, eight, nine, ten, eleven, twelve, thirteen, seventeen, eighteen, twenty-two, twenty-three, twenty-four, and twenty-five. The court has reviewed the paragraphs in question and does not find any of the paragraphs necessary evidence in the case. The material facts in this case are not disputed. The Couch Affidavit essentially summarizes the evidence (contract, correspondence, etc) and draws conclusions as to the import of the evidence. However, all of the documents speak for themselves and the Couch Affidavit is not necessary. Therefore, the court has not considered the Couch Affidavit in making its ruling on the motions for summary judgment, and thus the motion to strike will be deemed moot.

In support of its motion for summary judgment, and in opposition to Koransky's cross-motion for summary judgment, the Bar Plan first argues that denial of coverage was proper because the unambiguous terms and conditions of the policy were not satisfied. Questions of insurance coverage are subject to the rules of contract interpretation. Rice v. Meridian, 751 N.E.2d 685, 688 (Ind. App. 2001). The plain language of an insurance policy will be enforced in ascertaining the existence of coverage, if any. RMJ v. Scottsdale, 808 N.E.2d 159, 163 (Ind. Ct.

App. 2004) ("[i]f the language is clear and unambiguous, we give the language its plain and ordinary meaning"). The law of Indiana on this subject is presently clear, unequivocal, and undivided. Not only are unambiguous policy terms to be enforced, but the simple terms and conditions of a policy are to be applied to the facts. RMJ, 808 N.E.2d at 163. This is essentially the law of contract. The Bar Plan argues that in this case there are many elements of the policy that simply were not complied with and as such prelude coverage, aside from the right to rescind.

The Bar Plan asserts that regardless of the law as it applies to occurrence policies or to statutorily mandated insurance, for "claims made" attorney professional liability policies, Paint Shuttle, Inc. v. Continental Casualty Co., 733 N.E.2d 513, 520 (Ind. App., 2000), trans denied, is the law and supports the entry of summary judgment in favor of the Bar Plan. See also Ashby v. The Bar Plan & Davidson, 949 N.E.2d 307 (Ind. 2011) (rehearing petitioned on other grounds). The notice requirements of a professional liability policy are material and are the essence of the policy. In Paint Shuttle, a former client sued its law firm, which was insured for malpractice claims. 733 N.E.2d at 518. The firm orally informed its insurer of the malpractice lawsuit shortly after it was filed, but the insurer maintained in a later declaratory judgment action that the insured was owed no coverage because the insured did not submit written notification of the claim until after the policy at issue ended. Indiana's Court of Appeals agreed. Id. at 519. In Ashby, the insured never reported a claim, and the Indiana Supreme Court found that the policy provisions were not satisfied. The Bar Plan contends that in the present case Koransky did not inform the Bar Plan of a potential claim during the applicable policy period or on the renewal application, so no coverage is owed. Paint Shuttle, 733 N.E.2d at 520 ("the law

firm did not provide [the insurer] with written notice of [the] malpractice lawsuit until [] almost two years after the policy's expiration. [] Thus, the law firm failed to provide [the insurer] notice within the time frame proscribed in the malpractice policy").

"The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured. When the facts of the case are not in dispute, what constitutes proper notice is a question of law for the courts." Id. (citations omitted). In a claims made policy, proper notice defines the parameters of the insurer's obligation. In addition, excusing a delay in notice beyond the policy period alters a basic term of a professional liability policy and is thus impermissible. Paint Shuttle, Inc., 733 N.E.2d at 523; see also Ashby, supra. Notice under these types of policies is not just a mere formality. Enforcement of contractual notice provisions is important both because it validates the parties' freedom to contract and because it serves a utilitarian purpose by affording insurers the opportunity to underwrite or investigate claims. Paint Shuttle, 733 N.E.2d at 520-521; see also Ashby, supra. Prejudice is only implicated in occurrence-based policies, and not at issue here. Id. at 524 n.11 ("[w]e note when an insurance company has denied a claim under an 'occurrence' policy because of the insured's failure to provide reasonable notice of a claim, the insurer must show that it was prejudiced..."). The Bar Plan points out that the terms of the Bar Plan policy are unambiguous as to when the Bar Plan should be notified, and are unambiguous as to the need to advise of any circumstances known that could give rise to a claim in the renewal application:

**II. COVERAGE ... D. DISCOVERY CLAUSE:** If during the Policy Period … an Insured first becomes aware of a specific incident, act or omission while acting in a profession capacity providing Legal Services, which may give rise to a Claim for which coverage is provided under this Policy, and during the Policy Period or any Extension Period Coverage the Insured gives written notice to the Company of: 1. The specific incident, act or omission; 2. The injury or damage which has

resulted or may result from such incident, act or omission; and 3. The circumstance(s) by which the Insured first became aware of such incident, act or omission; then any Claim that may subsequently be made against the Insured arising out of such incident, act or omission shall be deemed for the purposes of this insurance to have been made during the Policy Period …

The Renewal Application inquired, "does the firm or any attorney or employee in the firm have knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us?" to which the plaintiff responded in the negative. It also provided:

**NOTICE TO APPLICANT – PLEASE READ CAREFULLY:**
REPRESENTATION: Applicant represents that the statements and information contained herein are true and that Applicant has not suppressed, omitted or misstated any facts … Applicant agrees that this application shall be the basis of the Policy of insurance issued by the Company and incorporated therein. Applicant agrees to notify the Company of any material change(s) … Applicant understands that any change(s) may result in an adjustment of the terms and conditions of the Policy … Applicant understands that the Policy applied for provides coverage on a "claims made and reported" basis ... TO AVOID LOSS OF COVERAGE IT IS IMPERATIVE THAT ALL KNOWN CIRCUMSTANCES, ACT OR OMISSIONS WHICH COULD RESULT IN A PROFESSIONAL LIABILITY CLAIM AGAINST YOU, YOUR FIRM OR A PREDECESSOR IN BUSINESS BE REPORTED TO YOUR PRESENT INSURER WITHIN THE TIME PERIOD SPECIFIED …

Similarly, the 2007 – 2008 policy states:

**IMPORTANT NOTICES**
This is a Claims-Made and Reported Policy. Only those Claims first made against an Insured and reported to the Company during the Policy Period are covered, subject to the terms and conditions of this Policy.… in reliance upon the statements in the application attached hereto and made a part hereof, subject to the Limits of Liability shown in the Declarations and all of the terms and conditions of this Policy, the Company agrees with the Policyholder …

**III. EXCLUSIONS**
**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF … A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of**

**any circumstance, act or omission that might reasonably be expected to be the basis of that Claim.**

* * *

VIII.    CLAIMS
A.        NOTICE OF A CLAIM: As a condition precedent to the coverage provided by this Policy and subject to the provisions of Section II. COVERAGE, Paragraph D. of this Policy, an Insured shall, within twenty (20) days of the date of any Claim is first made against that Insured, give written notice of that Claim to the Company.

* * *

VIII.    OTHER CONDITIONS

A.        APPLICATION
By acceptance of this Policy, all Insureds agree that the representations made in the Declaration Letter and Application (including all supplements) attached hereto and hereby made part of this Policy are true and complete to the best of the knowledge of all Insureds. This Policy is issued in reliance upon the truth of such representations and all Insureds warrant that no facts have been suppressed or misstated. This Policy embodies all agreements existing between the Insureds and the Company and any agents of the Company relating to this Policy.

The policy gave the Bar Plan the right to timely investigate potential claims. The Bar Plan argues that Koransky's failure to notify The Bar Plan of the Novogroder error in February 2007 when it became aware of the circumstances that could reasonably give rise to a claim (the lost contract opportunity for its client apparent to Koransky at least by the February 23, 2007 email) violated both the requirement for giving timely notice in the policy, triggered the exclusion, and violated the requirement to disclose circumstances that could give rise to a claim in the renewal documents. It is undisputed that Koransky reported nothing on its 2007 application for renewal. The Bar Plan asserts that if it had, the claim would have been excluded or the premiums increased, or coverage denied. The Bar Plan thus maintains that the failure to give notice before the expiration of the 2006 policy and not until well over six months after Koransky's knowledge of the facts giving rise to the claim violated Section III.L. of the "Exclusions" in the policy,

which excludes coverage for an insured who, before the policy effective date, knew or should reasonably have known of any act, omission, or circumstance that might reasonably be the basis of a claim.

The Bar Plan further argues that Koransky violated the policy from the start by admitting liability. Section VII B, under Assistance and Cooperation, specifies that "[t]he insured shall not make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the consent of the Company." (Exhibit 1, section VIIB). Attorney Yannakopoulos wrote an email on February 23, 2007 stating, "This whole situation was my fault and not the fault of my client. I apologize for the situation." Thus, the Bar Plan has firmly taken the position that it is entitled to judgment as a matter of law that there is no coverage for the Novogroder suit against Koransky and/or its attorneys for defense or indemnification thereof.

The Bar Plan next argues that it is entitled to rescission because the alleged material misrepresentation in applying for the policy renewal renders the policy void ab initio. The Bar Plan contends that, given the admission by Mr. Yannakopoulos on behalf of Koransky that the documents at issue were misfiled, it was impossible for Koransky not to expect --- given the resulting rescission by the property's seller and the seller's refusal to withdraw its cancellation notice, thereby resulting in Novogroder's lost opportunity to purchase --- that a claim would be made by Novogroder against Koransky. The Bar Plan points out that the admission by Mr. Yannakopoulos of the misfiling of the Novogroder documents occurred after the seller's rescission, in an email dated February 23, 2007, so at that time there was at the very least a reasonable belief in the likelihood of a claim against Koransky by Novogroder because the error

on Koransky's part as well as the resulting damage to the client were evident at that time. This was well before the renewal documents were received by the Bar Plan on behalf of Koransky on March 19, 2007, and well before Koransky's first reporting of the Novogroder claim on August 30, 2007.  In its Renewal Application for Lawyers' Professional Liability Insurance, for the 2007 – 2008 policy period, the Plaintiff responded "no" to question 24(c) when asked, "does the firm or any attorney or employee in the firm have knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us?" Since Koransky had notice of the error and a reasonable belief that a claim would be made as of February 2007, the Bar Plan asserts that a report should have been made before the expiration of the 2006 policy period. However,  Koransky delayed reporting the Novogroder claim risk from February 23, 2007 until August 30, 2007, well over four (4) months after the expiration of the 2006 policy, and well over six (6) months after Koransky's knowledge of the facts which gave rise to the Novogroder claim. Thus, the Bar Plan argues that  to the extent that it is not deemed rescinded and/or void <u>ab initio</u>, the policy was breached by Koransky, and no defense nor indemnity coverage is due under the governing law and explicit and agreed-upon terms of the policies.

Again, the Bar Plan asserts that under well-established principles of Indiana law, the Bar Plan is entitled to rescission of the Policy due to Koransky's  material misrepresentation and, specifically, the Koransky's statement in its renewal application, after its knowledge of the misfiling and attendant rescission of the Novogroder contract documents, that neither the firm nor any attorney in the firm had knowledge of any incident, circumstance, act or omission which "may give rise to a claim not previously reported …" <u>See, e.g., Colonial Penn Ins. Co. v. Guzorek</u>, 690 N.E.2d 664, 672 (Ind. 1997) (a "material misrepresentation or omission of fact in

an insurance application" that is "relied on by the insurer in issuing the policy" renders the policy void ab initio at the insurer's option); see also IND. CODE § 27-8-5-5(c). On summary judgment, the Court may determine as a matter of law whether an insured's answer to a question on an application for insurance was false and material. See Allied Prop. & Cas. Ins. Co. v. Good, 938 N.E.2d 227, 229–32 (Ind. App. 2010) (granting insurer summary judgment on rescission based on materiality of representation).

On the issue of falsity, the applicant's subjective intent in answering the question is irrelevant. See, e.g., Watson v. Golden Rule Ins. Co., 564 N.E.2d 302, 304 (Ind. Ct. App. 1990); accord Good, 938 N.E.2d at 229–32 (a misrepresentation on an application for an insurance policy is "material" if the fact misrepresented, had it been known to the insurer, would have reasonably entered into and influenced the decision whether to issue a policy or charge a higher premium; holding that insured's "no" answer to question whether "Coverage ever declined, cancelled, or non-renewed" was a misrepresentation). The law is clear that, "an insurance contract may be avoided by false representations which mislead, regardless of whether the representation was innocently made or made with a fraudulent intent." Watson, 564 N.E.2d at 304.

The answer to a question on an application is held to the standard of "whether a reasonable professional in the insured's position might expect a claim or suit to result." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 237 (3d Cir. 2001); see American Nat'l Fire Ins. Co. v. Berrones, 2000 U.S. Dist. LEXIS 16089, *18 (S.D. Ind. Oct. 13, 2000) ("The reasonableness of an insured's belief should be assessed under an objective standard, that is, whether a reasonable attorney in [the insured's] position would have believed that he had

breached a professional duty or foreseen that a claim would be made against him." (citations omitted)); see also Worth v. Tamarack Am., 47 F. Supp. 2d 1087, 1096 (S.D. Ind. 1999), aff'd, 210 F.3d 377 (7th Cir. 2000) (collecting cases). Although an attorney's actual knowledge of the facts is relevant to whether a reasonable attorney with that knowledge would have expected a claim, the attorney's subjective belief about the import of those facts is not. See Mt. Airy Ins. Co. v. Thomas, 954 F. Supp. 1073, 1079 (W.D. Pa. 1997) (courts must "distinguish between facts which are known to an attorney, which facts, when viewed by a reasonable person, could give rise to a claim of malpractice, and impressions which lead the attorney to believe that the client will not pursue a claim for malpractice"), aff'd, 149 F.3d 1165 (3d Cir. 1998). See Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatkis, 799 F.2d 218, 224 (5th Cir. 1986) (knowledge of circumstances at the time coverage was bound was sufficient to bar coverage, even where no suit had been filed and no claim had been made); see also Truck Ins. Exch. v. Ashland Oil, Inc., 951 F.2d 787, 788–91 (7th Cir. 1992) (prior knowledge condition barred coverage where accountant "almost certainly knew" before the inception of the policy that he would be a defendant in suit against his client brought by a third party alleging the client had committed fraud); General Ins. Co. v. Boyd, 2002 U.S. Dist. LEXIS 13276, *9-22 (S.D. Ind. July 9, 2002) (in Indiana, prior knowledge exclusion did not require the court to determine whether claim was "likely to succeed" but only if the insured "had any basis to reasonably anticipate" the claim).

Therefore, this court is not required  to measure the reasonableness of any expectation (or lack thereof) of being sued. The only issue is whether Koransky was aware of the circumstances creating a basis to anticipate a claim. The Bar Plan points out that the undisputed facts show that Koransky was aware of the misfiling of contract documents that were the basis for the contract's

withdrawal and attendant loss of opportunity to its client, Novogroder, before it denied knowledge of any potential claim or of circumstances creating a potential claim. The Bar Plan strongly contends that no reasonable attorney could have failed to recognize that a misfiling leading to a lost real estate purchase for a client is highly problematic from a legal malpractice standpoint. The Bar Plan further argues that, independent of the issue of reasonableness, the pertinent case law demonstrates that Koransky's knowledge of circumstances at the time coverage was bound was sufficient to bar coverage, since the circumstances were undisclosed. Truck , 951 F.2d at 788–91.

The Bar Plan argues that Koransky's failure to inform the Bar Plan of the existence of the circumstances giving rise of the Novogroder claim as of February 2007 was material to the issuance of the Policy to Koransky. A representation in an application for insurance is deemed material "if the fact or facts represented reasonably enter into and influence the insurer's decision whether to issue the policy or to charge a higher premium." Bush v. Washington Nat'l Ins. Co., 534 N.E.2d 1139, 1142 (Ind. Ct. App. 1989). The "final inquiry" concerning materiality is what the issuing insurer "might reasonably have done." Id. ("although experts may give their opinion as to materiality, 'the final inquiry is what that company might reasonably have done'"); see also id. at 1143 ("[a]t issue is not whether the [insurer's] criterion was reasonable, but given that criterion, whether the fact misrepresented can be said to have reasonably entered into [the insurer's] decision to issue the policy.").

A misrepresentation on an application for an insurance policy is "material" if the fact misrepresented, had it been known to the insurer, would have reasonably entered into and influenced the insurer's decision whether to issue a policy or to charge a higher premium. A

material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option. Allied Prop. & Cas. Ins. Co. v. Good, 938 N.E.2d 227 (Ind. Ct. App. 2010) (cites omitted; remanding to enter judgment in favor of insurer). Although materiality can present a question of fact, no issue of fact is raised when there can be "no reasonable difference of opinion." Ruhlig v. Am. Comty. Mut. Ins. Co., 696 N.E.2d 877, 880 (Ind. Ct. App. 1998) (granting insurer summary judgment on rescission); see Buckeye State Mut. Ins. Co. v. Hall, 2006 U.S. Dist. LEXIS 86735, *29 (N.D. Ind. Nov. 29, 2006) (same).

The Bar Plan claims that in the present case, there can be no reasonable difference of opinion that the Koransky's omission was material to the Bar Plan's decision to issue the Policy. See, e.g., Good, 938 N.E.2d at 229–32 (a misrepresentation "material" where insured's "no" answer to question whether "Coverage ever declined, cancelled, or non-renewed" was a misrepresentation); Fawer et al., 799 F.2d at 224 (knowledge of circumstances at the time coverage was bound was sufficient to bar coverage, even where no suit had been filed and no claim had been made); Truck Ins. Exch. v. Ashland Oil, Inc., 951 F.2d 787, 788–91 (7th Cir. 1992) (prior knowledge condition barred coverage where accountant "almost certainly knew" before the inception of the policy that he would be a defendant).

The Bar Plan points out that the plain language of the renewal application highlights the importance of full disclosure of any circumstances creating any potential claim to the Bar Plan's ability to assess the risk posed by the applicant. The Bar Plan notes that courts in other jurisdictions have determined that insurance application inquiries worded similarly to Question 24(c) --- asking about Koransky's knowledge of any circumstances that may give rise to a claim

against it --- are material to an insurer's acceptance of the risk. See, e.g., Westport Ins. Corp. v. Gionfriddo, 524 F. Supp. 2d 167, 171, 175–76 (D. Conn. 2007) (granting insurer summary judgment on rescission of policy where insured attorney represented he was not aware of "any fact or circumstance, act, error, omission, or personal injury which might be expected to be the basis of a claim or suit [a]gainst him"); Cont'l Cas. Co. v. Graham & Schewe, 339 F. Supp. 2d 723, 725–26, 728–29 (E.D. Va. 2004) (granting insurer summary judgment on rescission claim based on law firm's negative response to question whether "[a]fter inquiry is any attorney in the firm aware of ... [a]n act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm?"). For all these reasons, the Bar Plan maintains that Koransky's "patently false answer" to question 24(c) was material as a matter of law.

The Bar Plan also argues that Koransky's material misrepresentation renders the policy void ab initio. Insurers, "rely on the truthfulness and completeness of the information on the application in assessing whether to issue a policy and on what terms." Roe v. Sewell, 128 F.3d 1098, 1103 (7th Cir. 1996); see also Guzorek, 690 N.E.2d at 672 (rescission "protects the insurer's right to know the full extent of the risk it undertakes when an insurance policy is issued"). The Bar Plan argues that the undisputed facts show that the Bar Plan relied on Koransky's false statement in response to question 24(c) in issuing the Policy. Thus, the Bar Plan requests that this court grant the Bar Plan's motion for summary judgment and declare the entire Policy void ab initio.

Under Indiana law a person who signs an application for insurance containing material misrepresentations is "chargeable with the knowledge of the false statements and must be held

to have adopted them as his own." <u>Fed. Kemper Ins. Co. v. Brown</u>, 674 N.E.2d 1030, 1034,

1036 (Ind. Ct.App. 1997); <u>see American Family Mut. Ins. Co. v. Jeffery</u>, 2000 U.S. Dist. LEXIS

7104, *45 (S.D. Ind. Feb. 28, 2000) (applicant bound once application is signed).  In the present

case, as noted above, the notice to Koransky  in the renewal application stated, "[a]pplicant

represents that the statements and information contained herein are true and that Applicant has

not suppressed, omitted or misstated any facts. Applicant has made inquiry with each lawyer in

the firm regarding the accuracy of the answers on this application." It further stated that the

"[a]pplicant agrees that this application shall be the basis of the Policy of insurance issued by

the Company and incorporated herein. Applicant agreed to notify the Company of any material

change(s) in the statements in the application forms … Applicant understands that any change(s)

may result in an adjustment of the terms and conditions of the Policy of insurance and/or

premium charges …" (<u>Id</u>.) Likewise, the "important reminder" warned the applicant that "TO

AVOID LOSS OF COVERAGE IT IS IMPERATIVE THAT ALL KNOWN

CIRCUMSTANCES, ACTS OR OMISSIONS WHICH COULD RESULT IN A

PROFESSIONAL LIABILITY CLAIM AGAINST YOU, YOUR FIRM OR A

PREDECESSOR IN BUSINESS BE REPORTED …" (<u>Id</u>.) By signing the renewal Application

and attesting to its truth, accuracy, and completeness, Koransky's signatory adopted the

representations as Koransky's own. <u>See Buckeye State Mut. Ins. Co. v. Hall</u>, 2006 U.S. Dist.

LEXIS 86735, *10 (N.D. Ind. Nov. 29, 2006) (holding applicant responsible for

misrepresentation when she certified answers were "true, complete and correct"); <u>Foster v.

Auto-Owners Ins. Co.</u>, 703 N.E.2d 657, 659–60 (Ind. 1998) (applicant's signature "makes him

responsible for the misrepresentation," even if the misrepresentation was made by an authorized

representative of insurer, because "[i]t is the duty of every man to read what he signs"). Thus, argues the Bar Plan, Koransky is "responsible for [the statements] in the application" because "[t]o hold otherwise would be to ignore totally and render meaningless [the] signature certifying the contents of the application as true and correct." American Family Mut. Ins. Co. v. Jeffery, 2000 U.S. Dist. LEXIS 7104, *14-15 (S.D. Ind. Feb. 28, 2000), quoting Brown, 674 N.E.2d at 1035); see also Bush, 534 N.E.2d at 1142 (misrepresentation voids policy whether it was "innocently made or ...with a fraudulent intent").

According to the Bar Plan, any claim that Koransky might make for "partial" rescission would also conflict with the fundamental canon of Indiana contract law that a material misrepresentation prevents a "meeting of the minds" between the parties to the contract, rendering it void ab initio. See, e.g., Hall, 2006 U.S. Dist. LEXIS 86735, *14. The effect of rescission on an insurance policy is to "void the contract from its inception," as if it never existed. Guzorek, 690 N.E.2d at 671 n.4 (quoting Am. Underwriters Group, Inc. v. Williamson, 496 N.E.2d 807, 808 n.1 (Ind. Ct. App. 1986)). Consistent with this principle, Indiana courts have held that an insurer that is entitled to rescind a policy must elect between one of two remedies—the insurer must either void the policy in its entirety and return both parties to the status quo ante, or affirm the policy and seek damages. See Allianz Ins. Co. v. Guidant Corp., 884 N.E.2d 405, 414–15 (Ind. Ct. App. 2008) (party seeking relief on grounds that it was falsely induced to enter contract "is bound to treat the contract as entirely invalid. It may not choose certain provisions to affirm and certain provisions to reject."); see also Prudential Ins. Co. of Am. v. Smith, 108 N.E.2d 61, 65 n.4 (Ind. 1952) ("It is the general rule that a contract must be rescinded in whole, and that it can not be rescinded in part." (quotation omitted)).

Koransky, in response to the Bar Plan's summary judgment and in support of its cross-motion for summary judgment, sets forth several arguments: (1) that it gave timely notice; (2) that it promptly notified its insurance agent upon receipt of a claim; (3) that The Bar Plan's right to investigate was not diminished; (4) that the policy exclusions are inapplicable because Koransky was not in the position of a firm that reasonably should have known that events prior to April 15, 2007 may give rise to a claim, and that Mr. Yannakopoulos's February 23 email apology was "a courtesy, not an admission of wrongdoing" and did not violate the coverage exclusion that arises upon admissions of liability.

First, Koransky claims that it is owed coverage because it immediately notified The Bar Plan upon first receipt of a demand. Koransky argues that the policy defines a claim as a demand for money or services and that on this basis, the facts at issue differ from those in Paint Shuttle, Inc. v. Continental Cas. Co., 733 N.E.2d 513, 518 (Ind. Ct. App. 2000), trans. denied, or Ashby et al. v. The Bar Plan & Davidson, 949 N.E. 2d 307 (Ind. 2011).

The Bar Plan accepts the contention that Koransky notified The Bar Plan as soon as a "Claim" was made against the firm, and that notice was given in the 2007-2008 policy period. However, omissions giving rise to the claim occurred in the 2006-2007 policy period. In order for the 2007 Novogroder claim to be covered by the 2006-2007 policy, Koransky should have given written notice to The Bar Plan of the specific incident which resulted or may result and the circumstances by which the firm first became aware of such incident, act or omission --- during the 2006-2007 policy period. There is no dispute that this did not happen. If it had, the 2007 Novogroder Claim would have been deemed to have been made during the 2006-2007 policy period, and The Bar Plan states that it would not have denied coverage.

The claim was also not covered under 2007-2008 Bar Plan policy. In its Renewal Application for the 2007-2008 policy, signed by Mr. Bouwer on March 10, 2007 and received by The Bar Plan on or about March 19, 2007, the firm represented that after the inquiry of each lawyer named in the firm, neither the firm nor any attorney had knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported. Bouwer was to have inquired of each lawyer named in the firm about knowledge of any incident, circumstance, act or omission, which "may give rise to a Claim…," not "which will give rise to a Claim," and not "which won't give rise to a Claim unless we lose our lawsuits to fix our error." The question from the policy language is whether Koransky had knowledge of an "incident, circumstance, act or omission, which may give rise to a claim." Clearly, Koransky had knowledge of an omission, as evidenced by the emails from the seller of February 22 and 23, 2007. This is also underscored by the filing of the Alabama lawsuit on March 14, 2007, Novogroder v. NOM, 2007 U.S. Dist. LEXIS 61359 (N.D.Ohio Aug. 21, 2007).

Likewise, on March 2, 2007, Koransky wrote to Woody Camp about litigation that could ensue due to the seller' rescission --- "[i]f we cannot obtain that agreement, we would have no alternative but to file appropriate litigation at this time including a lis pendens notice … Would you kindly confirm to the writer that we have a standstill agreement wherein the Seller agrees not the place the subject Property under Contract to any third party …"

Undoubtedly, every lawyer understands that he or she can lose a lawsuit. (Which was likely the impetus for Koranksy to hire a retired Alabama judge to help with the Alabama litigation.) Koransky and its hired counsel knew if Alabama law applied they would lose, and they knew suit was filed in Alabama. Once the Alabama lawsuit was filed on March 14, 2007,

Koransky learned what Alabama law was and that if it lost the Alabama case, its acts/omissions could give Novogroder a claim.

The policy renewal application signed by Mr. Bouwer stresses THAT ALL KNOWN CIRCUMSTANCES, ACT OR OMISSIONS WHICH **COULD RESULT** IN A PROFESSIONAL LIABILITY CLAIM AGAINST YOU, YOUR FIRM OR A PREDECESSOR IN BUSINESS BE REPORTED TO YOUR PRESENT INSURER WITHIN THE TIME PERIOD SPECIFIED IN YOUR PRESENT POLICY. This does not say only claims made are required to be reported, but includes all known circumstances, acts, or omissions which could result in a professional liability claim. As of March 10, 2007, Koransky clearly knew of such omissions, and did not report them. It is undisputed that the misfiling and failure to return the real estate contract by Koransky that resulted in a rescission to the detriment of its client, was not revealed to The Bar Plan in its renewal application. This was clearly a material misrepresentation. The notice provisions of the policies were not complied with, and the information which was a prerequisite to coverage was not supplied in the renewal application. These provisions were material and of the essence and their breach results in an exclusion from coverage. There is simply no other possible answer on this point.

Second, Koransky claims that it notified its insurance agent of the claim who purportedly instructed it to write a letter. But it is undisputed that it was in August of 2007 that Koransky notified the insurance agent of the Novogroder facts. Language in an insurance agent's correspondence cannot alter the policy terms. The first page of the policy provides that **"This is a Claims-Made and Reported Policy. Only those claims first made against an insured and reported to the Company during the Policy Period are covered, subject to the terms and**

**conditions of this Policy."** Notably, Koransky has not cited to any case law in Indiana or elsewhere that would alter this.

In addition to the notice and other provisions, coverage under the policy existed "PROVIDED ALWAYS THAT such act or omission happens: During the Policy Period: or Prior to the Policy Period, provided that prior to the effective date of this Policy: Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and Such Insured had no basis to believe that such Insured had committed such an act or omission. NOTE: It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII …" Clearly, Koransky did not comply with this section.

Third, Koransky argues that The Bar Plan's right to investigate was not adversely affected. However, this argument ignores that the Bar Plan was excluded from knowledge of or involvement in the litigation in Alabama and events in Ohio prior to August, 2007, for a period of six months. It also was not included in Mr. Yannakopoulos' decision to take full responsibility for the failure to timely return to the seller the contract signed by the buyer, Novogroder, and to explain that it was due to his fault and his firm's misfiling. Clearly, this exclusion from such events and decisions minimized The Bar Plan's ability to investigate and influence any defense. Moreover, as the Bar Plan notes, the ability to investigate is not the standard for ascertaining whether coverage exists.

Although Koransky tries to distinguish the pertinent precedent on factual grounds, there can be no dispute that the notice portions of a policy are materials and of the essence. They are not contingent upon an ability to investigate. In Paint Shuttle, timely oral notice but a lack of written notice in the policy period barred coverage for a malpractice claim. 733 N.E.2d at 518.

Likewise, in <u>Ashby</u>, 949 N.E.2d 307 (Ind. 2011), the insured never reported a claim, and the Indiana Supreme Court found that the policy provisions were not met. Notice under these types of policies is not just a mere formality; it validates the freedom to contract and affords insurers the opportunity to both investigate and underwrite. <u>Ashby</u>, <u>supra</u>; <u>Paint Shuttle</u>, 733 N.E.2d at 520-521. Prejudice is only implicated in occurrence-based policies, and therefore is not at issue in the present case. <u>Id</u>. at 524 n.11. <u>Paint Shuttle</u> and <u>Ashby</u> make clear that notice of the events should have been given in the 06-07 policy period. The terms of the policy are unambiguous as to when The Bar Plan should be notified, and are unambiguous as to the need to advise of any circumstances known that could give rise to a claim in the renewal application.

Moreover, as the Bar Plan points out, the result of this admission was that an additional exclusion was triggered under the policy. That is, Koransky violated the policy conditions from the start by admitting liability in the email. Section VII B, under Assistance and Cooperation, specifies that "[t]he insured shall not make any payment, admit any liability, settle any claims, assume any obligation or incur any expense without the consent of the Company." Yannakopoulos' email of February 23, 2007 stating, "This whole situation was my fault and not the fault of my client. I apologize for the situation." is just such an admission. Thus, this court finds that the Bar Plan is entitled to judgment as a matter of law that there is no coverage for the Novogroder suit against Koransky and/or its attorneys for defense or indemnification thereof.

Fourth, Koransky asserts that no exclusions under the policy can apply because there is not a basis to believe it reasonably should have known the Novogroder events would give rise to a claim. It asserts it had no such knowledge before April 15, 2007, when the second policy began.

As noted above, Koransky agreed in that renewal application to notify the Bar Plan of any material change(s) in the statements in the application forms between the date of the application, March 10, 2007, and the effective date of the Policy of insurance, April 15, 2007. During that period of time, Koransky became involved in hiring counsel in Ohio and Alabama to litigate Novogroder lawsuits filed during that time in Alabama and Ohio, regarding the legal effect of these exact events and the implications to their client. It is abundantly clear that Koransky knew that if either court applied Alabama law to the situation, the rescission would stand. However, Koransky did not tell the Bar Plan anything about the matters. Even if the court were to overlook Koransky's failure to inform the Bar Plan of these events in the March 10, 2007 renewal application, this failure to notify the Bar Plan between March 10, 2007 and April 15, 2007 was in violation of its promise to notify the Bar Plan of the material changes in the statements in the application of March 10, 2007.

According to the plain language of the policy, it is unequivocal that if a claim is made against an insured during the policy period as a result of an act or omission prior to the policy period, coverage is subject to the insured having no basis to believe that such insured had committed such an act or omission prior to the policy period and subject to the other terms and conditions of the policy. This does not say a basis to believe that a claim would be made, but only a basis to believe that the insured had committed such act or omission. In this case there is no dispute that Koransky knew what acts it committed in prior to the 4/15/2007 – 4/15/2008 policy period. Yannakopoulos' mea culpa email is unequivocal. Clearly, there is no coverage for the Novogroder claim.

The claims-made and reported clause limits its applicability very specifically to such act

or omission that happens during the policy period, prior to the policy period, provided that prior to the effective date of this policy such insured did not give notice to the company or any prior insurer of any such act or omission; and such insured had no basis to believe that such insured had committed such an act or omission. The question is not whether the act or omission would have given rise to a claim, but whether Koransky committed acts which should have been reported that are conditions precedent to coverage. It is clear from the simple policy language that the Novogroder claim is not included within the plain language of the insuring agreement in either policy.

Likewise, the 2007-2008 policy exclusions clearly state the policy does not provide coverage for any claim based upon or arising out of a claim against an insured who before the policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that claim. There is no dispute that before the effective date of the 2007-2008 policy, Koransky knew of the acts and omissions. Because of the position that NOM took based on the acts/omissions of Koransky, and because of the allegations in the Alabama Lawsuit and Alabama law, this court agrees with the Bar Plan that there can be no legitimate argument that Koransky could not reasonably expect that conduct might be the basis of a claim.

As of February 23, 2007, Yannakopoulos took full responsibility for the misfiling and knew from that date that the offer for his client disappeared, due to his failure to timely provide the signature to the seller, e.g. due to the misfiling. Thus, an awareness of the conduct and the potential harm to his client existed by February 23, 2007, but was not only not reported to The Bar Plan then (and indeed not until August, 30, 2007), but was also not disclosed to The Bar

Plan on the later March 2007 renewal application where a Koransky representative swore to The Bar Plan that its attorneys had no "knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us…" or at any time between the March 2007 application and the policy start date of April 15, 2007.

Regardless of any full prior acts language in any extraneous document, Koransky admits that full prior acts coverage exists only "so long as the insured had no basis to believe that he had committed an act or omission giving rise to the claim." Due to the undisputed fact that emails from February 23, 2007 demonstrate that on that date, Koransky had a basis to believe that it had committed an act or omission giving rise to a claim, e.g. the lost contractual opportunity for Novogroder, this knowledge would render any 'prior acts coverage' unavailable. Rosenbaum v. Chicago, 2003 N.Y.App.Div.LEXIS 6346,*2-3 (N.Y.S.2d 2003).

The duty to notify an insurance company of potential liability is a condition precedent to the company's liability. When the facts of the case are not in dispute, what constitutes proper notice is a question of law. In a claims-made policy, it defines the parameters of the insurer's obligation. Full prior acts language in a letter from an insurance agent does not alter the notice requirement because excusing a delay in notice beyond the policy period alters a basic term of a professional liability policy and is thus impermissible. Paint Shuttle, Inc., 733 N.E.2d at 523; See also Ashby, supra. Paint Shuttle and Ashby make clear that notice of the events should have been given in the 06-07 policy period.

Koransky's failure to notify The Bar Plan of the Novogroder error in February 2007, the Lis Pendens in March 2007, the Alabama suit in March, and the Ohio lawsuit in March when it became aware of the circumstances that could reasonably give rise to a claim (the lost contract

opportunity for its client apparent to Koransky at least by the February 23, 2007 email and the chance of countersuit) violated both the requirement for giving timely notice in the policy, triggered the exclusion, and violated the requirement to disclose circumstances that could give rise to a claim in the renewal documents (and to inform the Bar Plan of any material changes thereto before the policy commenced April 15, 2007).

Conclusion

On the basis of the foregoing, Koransky's motion for summary judgment [DE 23] is hereby DENIED, and the Bar Plan's motion for summary judgment [DE 21]is hereby GRANTED.  Further, Koransky's motion to strike [DE 29] is hereby DEEMED MOOT.

 Entered: February 8, 2012.

s/ William C.  Lee<br>William C. Lee, Judge<br>United States District Court